UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

| | | |
|---|---|---|
| ERIC HALFON, individually and on behalf of all others similarly situated, | : | Case No.: |
| *Plaintiff*, | : : : | |
| | : | Civil Action |
| v. | : : | Class Action Complaint and |
| K&G MEN'S COMPANY, INC., D/B/A K&G FASHION SUPERSTORE, a Delaware corporation, | : : : | Demand for Jury Trial |
| *Defendant*. | : : | |

---

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Eric Halfon brings this Class Action Complaint and Demand for Jury Trial against Defendant K&G Men's Company, Inc., d/b/a K&G Fashion Superstore ("Defendant") to put an end to its unlawful text messaging practices and obtain redress for himself and all similarly situated individuals. Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

### NATURE OF THE ACTION

1. This lawsuit arises from a promotional text message campaign that Defendant—a national retailer—created to build brand awareness and drive sales. Through this campaign, Defendant sends text messages that contain advertisements and discount codes to consumers' cell phones.

2. To receive these text message advertisements and discounts on their cell phones,

consumers are instructed by Defendant to simply text the phrase "KGSTORES" to phone number "79999"—a short code that Defendant licenses and uses to administer its text messaging campaign. When Defendant receives such a text, it automatically enrolls the cell phone number from which the text message was sent into its mobile campaign. Defendant then sends "up to six" automated text messages every month to each enrolled cell phone number.

3. Defendant sends these automated text messages to such cell phone numbers indefinitely *regardless of whether or not they have been reassigned to new subscribers* and thus no longer belong to the same consumers who enrolled in the first place.

4. Consequently, Defendant routinely sends unsolicited text message advertisements to numerous consumers—like Plaintiff Halfon—with reassigned cell phone numbers (i.e., cell phone numbers that were previously assigned to someone else).

5. The Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") prohibits companies from sending unsolicited text messages to cell phones without the prior express consent of the recipients. To satisfy the TCPA, such consent must come from the actual, current subscriber of the cell phone number, not the former subscriber.

6. According to the FCC, the "unwitting recipients of reassigned numbers" often "face a barrage of telemarketing voice calls and texts along with debt collection calls . . . [which] pose a unique concern for consumers . . . [and] are exactly the types [of calls] that the TCPA is designed to stop."[1]

7. For these reasons, Defendant—which has failed to implement any policies or protocols to identify and "scrub" reassigned numbers from its database—routinely violates the TCPA by sending automated text messages to recycled cell phone numbers (including Plaintiff

---

[1] Federal Communications Commission, *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7961 (2015).

Halfon's cell phone) without consent. These TCPA violations have caused Plaintiff and a class of similarly situated individuals (the "Class," defined below) to suffer actual harm, including the violation of their statutory rights and the aggravation, nuisance, and invasion of privacy that necessarily accompanies the receipt of numerous unsolicited text messages.

8. As such, Plaintiff seeks an injunction requiring Defendant to cease all unsolicited text message activities, as well as an award of statutory damages, costs, and reasonable attorneys' fees.

## PARTIES

9. Plaintiff Eric Halfon is a natural person, a citizen of the State of New York, and a resident of Suffolk County, New York.

10. Defendant K&G Men's Company, Inc., d/b/a K&G Fashion Superstore is a corporation that is incorporated in the State of Delaware with its corporate headquarters located at 1225 Chattahoochee Avenue, Atlanta, Georgia 30318. Defendant is registered to do business with the NYS Department of State (DOS ID# 2526512), and does business in New York and throughout the United States.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute.

12. This Court has personal jurisdiction over Defendant and venue in this District is proper under 28 U.S.C. § 1391(b) because Defendant owns and operates retail stores within this District, conducts significant amounts of business transactions within this District, and because a substantial part of the wrongful conduct giving rise to this case occurred in and/or was directed towards this District. Additionally, Plaintiff resides in this District.

## COMMON FACTUAL ALLEGATIONS

**A.      Businesses That Send Automated Text Messages Are Required to Account For Cell Phone Numbers In Their Databases That Have Been Reassigned To New Subscribers.**

13.     Text messaging is a highly effective form of advertising, as almost 90% of all text messages are read within *six minutes* of delivery. Combined with the potential to instantaneously reach millions of consumers at a time with minimal cost, marketers around the country have used automated text messaging campaigns to extend the promotional reach of their products, brands, and services.

14.     Consumers who subscribe to receive these text advertisements often welcome them. But problems arise when companies send text messages to people who never signed up—specifically, people who, through no fault of their own, merely happen to have been assigned a telephone number that was previously assigned by the carrier to somebody else.

15.     Indeed, more than 37 million people receive a recycled cell phone number every year. Unfortunately, many of these consumers now receive streams of unwanted and unsolicited text messages that are intended for others, all because the businesses that are taking advantage of this highly effective form of advertising fail to update their databases by "scrubbing" (i.e., removing) recycled numbers.

16.     Numerous commercial services are available to help mobile marketers identify and remove recycled numbers from their calling lists. Some offer "Direct-to-Carrier" access to verify—either individually or in bulk—current subscriber information, which show whether or not specific telephone numbers have been reassigned.

17.     Businesses certainly have the ability to use their own resources to determine whether the phone numbers in their consumer databases have been reassigned. As the FCC

recently emphasized:

> [T]he TCPA does not prohibit calls to reassigned wireless numbers, or any wrong number call for that matter. Rather, it prescribes the method by which callers must protect consumers if they choose to make calls using an autodialer, a prerecorded voice, or an artificial voice. In other words, nothing in the TCPA prevents callers from manually dialing. Callers could remove doubt by making a single call to the consumer to confirm identity. Even if the consumer does not answer, his or her voicemail greeting might identify him or her. Callers can also email consumers to confirm telephone numbers.

Federal Communications Commission, *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7961 (2015).

18. Despite the numerous ways in which recycled cell phone numbers may be identified, many businesses—like Defendant—ignore them, and send out automated text messages without taking the necessary steps to ensure that they are only texting the intended recipients.

19. These companies force individuals with recycled cellular telephone numbers to incur the cost and bother of receiving unauthorized text advertisements, in violation of the TCPA.

**B.  Defendant Uses Automated Dialing Equipment To Text Thousands of Recycled Cell Phone Numbers Simultaneously and Without Human Intervention.**

20. Defendant routinely sends promotional text messages to cell phone numbers enrolled in its text message campaign.

21. Unfortunately, Defendant does not take any steps to purge its calling lists of recycled numbers or otherwise ensure that it is only sending its automated text messages to consumers that have opted-in to receive them.

22. As a result, Defendant routinely sends promotional text messages to cell phone numbers that have been recycled and reassigned to new individuals that have never provided

5

their consent to receive them.

23. Nonetheless, Defendant sent (and continues to send) the promotional text messages at issue to recycled cell phone numbers using an automatic telephone dialing system ("ATDS"). Specifically, the hardware and software used by Defendant has the capacity to store, produce, and dial random or sequential numbers, and/or receive and store lists of telephone numbers, and to dial such numbers, *en masse*, in an automated fashion without human intervention. To that end, Defendant's automated dialing equipment includes features substantially similar to a predictive dialer, inasmuch as it is capable of making numerous text message calls simultaneously (all without human intervention).

24. By sending unsolicited and automated text messages, Defendant has caused consumers actual harm. Plaintiff and members of the Class were not only subjected to the aggravation that necessarily accompanies the receipt of spam text message calls, but to make matters worse, consumers frequently must pay their cell phone service providers for the receipt of such unauthorized text messages.

25. Moreover, Plaintiff and members of the Class suffered injuries in the form of invasions of privacy and violations of their statutory rights, the monies paid to receive Defendant's unsolicited text messages, the diminished value and utility of their telephone equipment and telephone subscription services (i.e., the value of such equipment and services is higher when unencumbered by repeated and harassing text message calls), the wear and tear on their telephone equipment, the loss of battery (which becomes diminished with each incoming phone call), the loss of battery life (which has a finite number of charging cycles), and the electricity costs required to recharge their cell phones.

**FACTS RELATING TO PLAINTIFF HALFON**

26. In or around April 2015, Plaintiff Halfon subscribed to a new cell phone number. He does not shop at Defendant's stores, has never provided Defendant with his phone number, and has never provided Defendant with consent to call or text him for any reason.

27. Nonetheless, Defendant regularly sends promotional text messages to Halfon's cell phone number from its short code, 79999.

28. For example, <u>Figure 1</u>, below, shows a stream of the impersonal, automated text messages that Plaintiff has received from Defendant in 2016. These are all impersonal telemarketing text messages that advertise coupons and sales, promote Defendant's business, and encourage the purchase of Defendant's goods and services.



**(Figure 1.)**

29. Defendant failed to take any steps or implement any policies and protocols to identify and scrub Plaintiff's number from its database.

## CLASS ALLEGATIONS

30. Plaintiff Eric Halfon brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (3) on behalf of himself and a class of similarly situated individuals (the "Class"), defined as follows:

> All individuals in the United States who: (i) received more than one text message; (ii) from Defendant's short code (79999); (iii) at a cellular telephone number; (iv) after it was reassigned.

The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

31. **Numerosity**: The exact size of the Class is unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, hundreds of consumers fall into the definition of the Class. Class members can be easily identified either directly from Defendant's records or by directly comparing Defendant's records to commercially available databases.

32. **Commonality and Predominance**: There are many questions of law and fact common to Plaintiff's and the Class's claims, and those questions predominate over any questions that may affect individual Class members. Common questions for the Class include, but are not necessarily limited to the following:

8

    (a)    Whether Defendant sent text messages to individuals who did not consent to receive them;

    (b)    Whether Defendant sent such text messages using an automatic telephone dialing system;

    (c)    Whether Defendant's conduct violated the TCPA; and

    (d)    Whether Plaintiff and the Class members are entitled to treble damages based on the willfulness of Defendant's conduct.

33.    **Typicality**: Plaintiff's claims are typical of the claims of other members of the Class, in that Plaintiff and the Class members sustained damages arising out of Defendant's uniform wrongful conduct.

34.    **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in complex litigation and class actions. Plaintiff's interests are the same as those of the other Class members, in that his claims arise from the same misconduct and share the same essential characteristics as the claims belonging to the other Class members. Plaintiff has no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the Class members, and have the financial resources to do so. Neither Plaintiff nor his counsel has any interest adverse to those of the other Class members.

35.    **Policies Generally Applicable to the Class**: This class action is appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members and making final injunctive relief appropriate

with respect to the Class as a whole. Defendant's practices challenged herein apply to and affect each of the members of the Class uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

36. **Superiority**: This case is also appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy. The injuries suffered by the individual members of the Class are likely to have been relatively small compared to the burden and expense of individual prosecution of the litigation necessitated by Defendant's actions. Absent a class action, it would be difficult, if not impossible, for the individual Class members to obtain effective relief from Defendant. Even if Class members themselves could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties and to the Court, and require duplicative consideration of the legal and factual issues presented herein. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort, and expense will be fostered, and uniformity of decisions will be ensured.

37. Plaintiff reserves the right to revise the foregoing class allegations and definition based on facts learned through additional investigation and discovery.

**CAUSE OF ACTION**
**Violations of the TCPA, 47 U.S.C. § 227**
**(On behalf of Plaintiff and the Class)**

38. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

39. Defendant sent telemarketing text messages to the cellular telephones of Halfon and the Class members, without having their prior express written consent, for the purpose of encouraging the purchase of its goods.

40. Defendant sent these telemarketing text messages using equipment that had the capacity to store or produce telephone numbers using a random or sequential number generator, and/or receive and store lists of telephone numbers, and to dial such numbers, *en masse*, simultaneously and without human intervention.

41. By sending telemarketing text messages to cellular telephone numbers using an automatic telephone dialing system and without the prior express written consent of the text recipients, Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii).

42. As a result of its unlawful conduct, Defendant repeatedly invaded Plaintiff's and the Class's personal privacy, causing them to suffer damages and, under 47 U.S.C. § 227(b)(3)(B), entitling them to recover $500 in damages for each violation and an injunction requiring Defendant to stop its illegal text messaging campaign.

43. To the extent Defendant's misconduct is determined to be willful, the Court should treble the amount of statutory damages under 47 U.S.C. § 227(b)(3).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Eric Halfon, individually and on behalf of the Class, prays for the following relief:

A. An order certifying the Class as defined above, appointing Plaintiff Eric Halfon as the representatives of the Class and appointing his counsel as Class Counsel;

B. An award of actual and statutory damages;

C. An injunction requiring Defendant to cease all unsolicited telephone calling

activities;

      D.     An injunction requiring Defendant to cease all use of automated or computerized telephone calling equipment;

      E.     A declaratory judgment that Defendant's telephone calling equipment constitutes an automated telephone dialing system under the TCPA;

      F.     An order requiring Defendant to disclose the names of any third-party companies involved in the generation of the text messages alleged herein, along with the terms of any contracts it has with such entities;

      G.     An order requiring Defendant to permanently cease-and-desist from all unlawful conduct as alleged herein, and otherwise protecting the interests of the Class;

      H.     An award of reasonable attorneys' fees and costs; and

      I.     Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

                      Respectfully submitted,

                      **ERIC HALFON,** individually and on behalf of all similarly situated individuals,

Dated: August 10, 2016        By: /s/ Fred D. Weinstein
                                    One of Plaintiff's Attorneys

                                Fred D. Weinstein (SBN 1671452)
                                fweinstein@kelaw.com
                                KURZMAN EISENBERG CORBIN & LEVER, LLP
                                One North Broadway, 10th Floor
                                White Plains, New York 10601
                                Tel: 914.285.9800
                                Fax: 914.285.9855

Rafey S. Balabanian\*
rbalabanian@edelson.com
Eve-Lynn J. Rapp\*
erapp@edelson.com
Stewart R. Pollock\*
spollock@edelson.com
EDELSON PC
123 Townsend Street, Suite 100
San Francisco, California 94107
Tel: 415.212.9300
Fax: 415.373.9495

\**Pro hac vice* admission to be sought.

*Attorneys for Plaintiff and the Putative Class*